**MAREX TITANIC, INC., Plaintiff,**

**Titanic Ventures, Intervening Plaintiff,**

v.

**The WRECKED AND ABANDONED VESSEL, RMS TITANIC, in rem, Defendant.**

**Civ. A. No. 2:92cv618.**

United States District Court, E.D. Virginia, Norfolk Division.

Nov. 12, 1992.

Philip Norton Davey, Davey Associates, P.C., Norfolk, Va., for plaintiff.

Mark Steven Davis, Fred Bradford Stillman, McGuire, Woods, Battle & Boothe, Norfolk, Va., John Dougherty, Washington, D.C., intervenor-plaintiff and intervenor-defendant.

## ORDER

CLARKE, District Judge.

This matter is before the Court on the motion of Plaintiff, Marex Titanic, Inc. ("Marex"), for reconsideration of the Court's Vacatur of Plaintiff's Voluntary Dismissal. For the reasons stated below, the motion is DENIED.

## FACTS

On August 7, 1992, Marex filed a complaint with the Court asking for possessory and ownership claims, salvage claims and claims for injunctive relief of the defendant, the abandoned wreck, the *RMS Titanic* ("*Titanic*"). By Order dated August 12, 1992, Judge Payne issued a warrant of arrest for the *Titanic* and ordered the U.S. Marshal to receive and take into his possession and control any salvaged items from the *Titanic* until the Court made a further determination of ownership. The Order further provided that if the vessel was not released within ten days of execution of *in rem* jurisdiction, Marex was to publish notice of the order and arrest announcing that Marex had filed a claim with respect to the *Titanic* and allowing any persons claiming any interest in the *in rem* defendant an opportunity to file their claim within thirty days.

The warrant was executed on August 12, 1992, and the ten day waiting period expired on August 22. Marex delayed publication for thirty-two days, publishing notice on September 23, 1992. On that same day Titanic Ventures, by special appearance, filed a Motion to Vacate Arrest and Dismiss Complaint based, in part, on misrepresentations made to the Court during the hearing on the warrant. A hearing on the motion was scheduled for September 25, 1992, as Titanic Ventures feared Marex was progressing in plans to maintain salvage operation at the site of the wreck. By agreement of the parties, the hearing was rescheduled for September 29, and Marex agreed to maintain the *status quo* with respect to salvage operations. Marex, however, warned Titanic Ventures that it

still intended to head towards the dive site above the *Titanic*.

On September 28, Titanic Ventures filed a Verified Motion for Preliminary Injunction asking this Court to restrain Marex and/or its agents from conducting salvage operations and/or improving its position with respect to salvage or salvage preparations at the site. At the end of the first day's testimony, comprised of two of Titanic Ventures' witnesses, and with numerous witnesses remaining, this Court entered a Temporary Restraining Order prohibiting Marex from engaging in salvage operations to preserve the *status quo* during the remainder of the hearing. On September 30, three more witnesses were heard, yielding a total record of 425 pages of transcript. Throughout the hearing, numerous bench memos were submitted to the Court regarding bond requirements, Titanic Ventures' status as Salvor in Possession and Supplemental Admiralty Rule E(8).

On October 1, 1992, Marex filed a Notice of Voluntary Dismissal of the Action pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure. Marex contended this dismissal was of right as no Answer or Motion for Summary Judgment had yet been filed in the case. After hearing arguments on whether or not to vacate Marex's notice of voluntary dismissal, this Court vacated Marex's notice based on the narrow holding in *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2nd Cir.), *cert. denied*, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953), that a Rule 41(a)(1)(i) voluntary dismissal may be denied by the Court if the case has gone into the merits and substantial evidence has been received at the time the notice is filed.

On October 2, 1992, Titanic Ventures agreed to the Court exercising *in personam* jurisdiction over it, and both parties agreed that this gave the Court the authority to determine who had exclusive salvage rights to the *Titanic*. Accordingly, after the day's testimony, this Court ruled from the bench[1] by vacating its previous warrant and declaring Titanic Ventures as the first and exclusive salvors of the *Titanic*. The Court entered a permanent injunction against Marex, its agents, its joint venturer's employees, successors or any others connected with them, from taking any action towards salvaging any items from the *Titanic*.

On October 16, 1992, Marex filed with this Court a Motion for Reconsideration of the Court's Vacatur of Plaintiff's Voluntary Dismissal. Marex argues this Court's reliance on *Harvey* was "*totally* misplaced" and that other courts, including the Second Circuit, have disfavored the use of the case and limited it to its specific facts. Titanic Ventures responded by arguing that this case falls squarely into the facts of *Harvey* because it involves a very unique set of facts. The Court agrees with Titanic Ventures.

## MOTION FOR RECONSIDERATION OF COURT'S VACATUR OF PLAINTIFF'S NOTICE OF DISMISSAL PURSUANT TO RULE 41(a)

■ Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure provides, in pertinent part, that

> [s]ubject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, ...

Fed.R.Civ.P. 41(a)(1)(i). Courts have interpreted this rule strictly by its terms allowing voluntary dismissals as of right if notice is given at the early stages of the case where defendants would not be prejudiced by such action. *See e.g. Armstrong v. Frostie Co.*, 453 F.2d 914, 916–17 (4th Cir. 1971); *Piedmont Interstate Fair Ass'n v. Bean*, 209 F.2d 942 (4th Cir.1954). The

---

**1.** The Court ruled from the bench by oral rather than by written opinion because Marex had its salvage vessel at sea at the *Titanic* wreck site at a claimed cost of $25,000 to $37,000 a day.

Because of these continuing expenses, the Court concluded that the parties were entitled to the earliest possible ruling.

Rule has been interpreted as creating a bright-line test of when a case is at an early stage—before an Answer or Motion for Summary Judgment has been filed. *Universidad Central Del Caribe, Inc. v. Liaison Committee on Medical Educ.,* 760 F.2d 14, 19 (1st Cir.1985); *Santiago v. Victim Services Agency of Metro. Assistance,* 753 F.2d 219, 222 (2nd Cir.1985). The Rule presumes that the defendant is not prejudiced when the plaintiff dismisses the case before one of these particular filings have been made. *Cf. Exxon Corp. v. Maryland Casualty Co.,* 599 F.2d 659, 661 (5th Cir. 1979) ("after the defendant has become actively engaged in the defense of a suit, he is entitled to have the case adjudicated and it cannot, therefore, be terminated without either his consent, permission of the court, or a dismissal with prejudice that assures him against the renewal of hostilities").

Although Rule 41(a) sets forth a bright-line rule as to what cuts off a plaintiff's right to a voluntary dismissal without prejudice, courts have recognized that certain other pleadings may also bar this right.[2] Included in this category are pleadings which effectively "join issue on the controversy or [bring] the court into consideration of the merits of the controversy." *Plains Growers, Inc. v. Ickes–Braun Glasshouses, Inc.,* 474 F.2d 250 (5th Cir. 1973); *Littman v. Bache & Co.,* 252 F.2d 479 (2nd Cir.1958); *Harvey Aluminum, Inc. v. American Cyanamid Co.,* 203 F.2d 105 (2nd Cir.), *cert. denied,* 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953); *Grass v. Citibank, N.A.,* 90 F.R.D. 79 (S.D.N.Y. 1981); *Robertson v. Limestone Mfg. Co.,* 20 F.R.D. 365 (W.D.S.C.1957). In *Harvey,* the Second Circuit held that a motion for preliminary injunction was the equivalent of an answer for Rule 41(a) purposes where the proceedings had reached a point where the defendant had expended much time and effort in the preparation of his case and the case was in the midst of hearings. 203 F.2d at 107–08.

Courts have noted that the *Harvey* line of cases "has been virtually confined to its facts." *Universidad,* 760 F.2d at 18. For example, it has not been followed where extensive *pretrial* proceedings such as discovery or negotiation attempts have taken place. *See. id.* at 18 (collecting cases). While the Court agrees with the holding in *Universidad* and with Marex that *Harvey's* application is very limited, this case does fit in the *Harvey* framework as this controversy is very unique in nature.

█ In this case, Marex, in an *ex parte* hearing, applied for a warrant of arrest seeking sole ownership and salvage rights to the *Titanic.* After taking jurisdiction over the vessel, this Court ordered Marex to publish notice of its claim to the *Titanic so as to give the public an opportunity to challenge Marex's claim.* Titanic Ventures intervened on September 23 for exactly this purpose—to claim its right to exclusively salvage the *Titanic.* After several days of testimony comprising 425 pages of transcript, Marex gave Notice of its Voluntary Dismissal. At that time, the Court was way beyond the early stages of the case. It is important to note that Marex's Notice of Voluntary Dismissal did not arise in the typical progression of judicial proceedings. It was filed *after* the Court had begun consideration of the question of who had the exclusive right to salvage the *Titanic.* Marex came to this Court asking for a warrant of arrest in its favor and a determination of ownership and salvage rights to the *Titanic.* By its terms, the warrant issued by this Court's Order created *in rem* jurisdiction over the defendant *Titanic* and provided that notice and opportunity to challenge Marex's claim was to be given to potential claimants. It was in respect to this Order that Titanic Ventures entered the case to challenge Marex's claim to the *Titanic.* Moreover, it was not until after two full days of testimony on the

---

**2.** A motion to dismiss for failure to state a claim upon which relief can be granted has been regarded as the equivalent of a motion for summary judgment for Rule 41(a) purposes. *See e.g. Exxon Corp. v. Maryland Casualty Co.,* 599 F.2d 659 (5th Cir.1979); *Davenport v. Saint*

*Mary Hosp.,* 633 F.Supp. 1228 (E.D.Pa.1986); *National Cement Co., Inc. v. Mead Corp.,* 80 F.R.D. 703 (D.C.N.Y.1978); *Tele–Views News Co. v. S.R.B. TV Pub. Co.,* 28 F.R.D. 303 (D.C.Pa. 1961).

issue of salvage rights that Marex filed its Notice for Voluntary Dismissal asking this Court to dismiss without prejudice the proceedings.

 At that point the claims made by Marex in the *ex parte* hearing before Judge Payne, which resulted in the Court then taking action favorable to Marex, had been largely disproved. Furthermore, by that time Marex's salvage vessel was poised over the wreck of the *Titanic* immediately prepared to begin salvage operations. A dismissal of the complaint at that stage would have allowed Marex to commence salvage operations and would have placed on Titanic Ventures the burden of bringing another action and producing the same testimony again. Additionally, the new action would be complicated by requirements for locating and accounting for artifacts salvaged in the meantime. Application of Rule 41(a) at this stage of the proceedings would have frustrated the purpose of the rule which is to "permit a disengagement of the parties at the behest of the plaintiff only in the early stages of a suit, before the defendant has expended time and effort in the preparation of his case." *Armstrong*, 453 F.2d at 916.

## CONCLUSION

The Court finds Marex's attempt at a voluntary dismissal was a last minute attempt to get the relief it sought without going through the judicial process. Marex came to this Court asking it to grant it exclusive salvage rights to the *Titanic.* Throughout the proceedings, the Court FINDS Marex exploited the judicial process. It made misrepresentations to the Court upon which the Court relied when it took jurisdiction over the vessel and agreed to determine salvage rights. Marex also delayed publishing notice of the warrant and agreed to delay the preliminary hearing by three days. It used this time to head off to the wreck site so as to better position itself in court. Throughout the proceedings, Marex made clear that it was poised and ready to commence salvage operations as soon as the Court lifted its temporary injunction. As the hearing on

the merits of who had exclusive salvage rights progressed and the outlook for Marex became bleak, Marex attempted to divest this Court of jurisdiction, effectively dissolving the temporary injunction and allowing Marex to proceed with its salvage operations.

By the time Marex filed its Notice for Voluntary Dismissal, the parties' claims had reached a sufficiently advanced stage of litigation to preclude voluntary dismissal without prejudice. The parties and this Court expended considerable effort and expense in preparation for the hearing and the merits of the claims for injunctive relief were squarely raised at the hearing. Accordingly, the plaintiff's Motion for Reconsideration of the Court's Vacatur of Plaintiff's Voluntary Dismissal is DENIED.

IT IS SO ORDERED.